# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CRAIG GRAFTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18 C 06099 |
| | ) | |
| FOBELK, GILLILAND, and BOLLARD, | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On May 13, 2018, Craig Grafton went to inspect his late mother's home, in which he has a 1/3 ownership interest. The house was locked and appeared to be empty. Mr. Grafton called the police, obtained permission to break a window and enter the home, and encountered his brother, who was living there and also has a 1/3 interest in the house. The defendant police officers briefly spoke with Mr. Grafton's brother and then asked Mr. Grafton to leave the premises. Mr. Grafton, who is proceeding *pro se*, filed this action alleging that the defendant police officers interfered with his property rights in the home by asking him to leave, that they conspired with his brother, and that they forced him to file an eviction action to gain entry to the property and denied him a police report. The defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted. The Court does not doubt the humiliation that Mr. Grafton says he experienced that day, but agrees that he has not stated a cognizable claim for relief. The motion to dismiss is granted.

## BACKGROUND

Mr. Grafton went to his late mother's house, 7842 S. May Street in Chicago, on May 13, 2018 to inspect the property as administrator of his mother's estate. *See* Compl. ¶ 6, ECF No. 10.

Though Mr. Grafton's brother was present at the home, he did not answer when Mr. Grafton knocked and rang the doorbell. Tr. at 4:25–5:1, ECF No. 17.[1] Mr. Grafton called 911, and when the police arrived he showed them probate paperwork proving his 1/3 interest in the home and asked permission to break a window to enter. *Id.* at 5:1-7. The police officers assented, and Mr. Grafton did so. *Id.* at 5:7-9. Mr. Grafton's brother, who also has a 1/3 interest in the home, *id.* at 7:16-22, appeared. The police officers briefly spoke with Mr. Grafton's brother, and then asked Mr. Grafton to leave the premises. *Id.* at 5:13-16. Though the police threatened arrest if he stayed, *id.* at 5:15-20, Mr. Grafton was not arrested and does not allege any physical contact with the defendant police officers. He brings this action under 42 U.S.C. § 1983 alleging interference with his property rights and obligations to the estate, as well as conspiracy, in being asked to leave the home, and complains he was denied a police report describing the incident that day. Compl. ¶ 6, ECF No. 10.

## DISCUSSION

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).

---

[1] While courts are required to screen complaints by litigants proceeding *in forma pauperis* under 28 U.S.C. § 1915(e)(2), the Seventh Circuit has cautioned against using plaintiffs' statements at hearings to dismiss their complaints with prejudice for failure to state a claim. *See Williams v. Wahner*, 731 F.3d 731, 733-34 (7th Cir. 2013) (distinguishing improper "oral examination of a party by the judge designed to elicit answers that will enable the judge to resolve contestable factual issues" from the judge permissibly "simply trying to determine what the plaintiff is alleging"). Here, Mr. Grafton will be permitted to amend his complaint, and the colloquy at the status hearing, which was properly transcribed, was intended to clarify the allegations in his rather thin complaint. *See Henderson v. Wilcoxen*, 802 F.3d 930, 932 (7th Cir. 2015) ("The judge is not to be criticized for giving the plaintiff, unrepresented by counsel and unschooled in legal procedure, an opportunity to amplify his complaint orally, which might provide guidance for the next steps in the lawsuit.") Moreover, Mr. Grafton does not take issue with the defendants' recitation of the facts in their motion to dismiss based on his description at the status hearing.

To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal filings by *pro se* litigants are to be liberally construed. *Mallett v. Wis. Div. of Vocational Rehab.*, 130 F.3d 1245, 1248 (7th Cir. 1997). In ruling on a motion to dismiss under Rule 12(b)(6), a court must construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but the court need not accept legal conclusions or conclusory allegations. *Iqbal*, 556 U.S. at 680-82.

Here, Mr. Grafton asserts that his constitutional rights were violated in being asked to leave his late mother's house. Whether construed as a Fourteenth or Fourth Amendment violation, Mr. Grafton ultimately does not state a claim upon which relief can be granted. Beginning first with a Fourteenth Amendment claim, Mr. Grafton asserts that he was forced to file an eviction proceeding to regain possession of the property. The fact that an eviction proceeding remained open to him—and, in fact, that he was required to file such a proceeding rather than engaging in self-help[2]—forecloses this claim. Unlike the deprivation of property in *Johnson v. City of Evanston,* 250 F.3d 560, 562 (7th Cir. 2001), in which the plaintiff had "no remedy, period" that "might supply whatever process is due," Mr. Grafton was at all times able to file eviction proceedings to regain possession of the house. Because he was not deprived of due process, this part of his § 1983 claim fails. Insofar as Mr. Grafton alleges that the police failed to protect his property interest from his brother, these claims are equally unavailing, as "if private actors seize property, the police will not

---

[2] "In Illinois, self-help is not an appropriate method of eviction." *White v. City of Markham*, No. 99-CV-3162, 1999 WL 1044835, at *3 n.5 (N.D. Ill. Nov. 16, 1999) (citing *Yale Tavern, Inc. v. Cosmopolitan Nat'l Bank*, 259 Ill. App. 3d 965, 971, 632 N.E.2d 80, 85 (1994)).

be liable under § 1983 just for failing to order its release." *Hansen v. Cannon*, 122 F. App'x 265, 269 (7th Cir. 2004).

Turning next to a potential Fourth Amendment claim, "the question of whether a seizure has occurred when police officers merely instruct an individual to leave their home remains unresolved," *Wozniak v. Zielinski*, No. 14-CV-05009, 2016 WL 5373077, at *11 (N.D. Ill. Sept. 26, 2016) (internal quotation marks omitted), particularly as many of these cases are decided on qualified immunity grounds. The metric for whether a seizure has occurred is generally whether one feels "free to leave" a police encounter, *see, e.g.*, *Spiegel v. City of Chicago*, 106 F.3d 209, 211 n.2 (7th Cir. 1997) (finding that a former tenant who was evicted from his apartment and prevented by police from re-entering was "certainly" free to leave, as he "could have gone anywhere with the exception of his former apartment"). "[W]hen a person has no desire to leave the scene of an encounter with police," as in this case, however, "the appropriate inquiry is whether a reasonable person would feel free to decline the officer's request or otherwise terminate the encounter." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1177 (7th Cir. 1994) (quoting *Florida v. Bostick*, 501 U.S. 429, 435-36 (1991)). One distinguishing factor in this context is whether the individual was occupying the home at the time they were asked to leave; while it may be a seizure to be asked to leave one's current residence, non-residents may be asked to leave the premises without constituting a seizure. *Compare Kernats*, 35 F.3d at 1177-78, *with Spiegel*, 106 F.3d at 211-12 ("The obvious distinction between this case and *Kernats* is that the Kernats family already was *occupying* its dwelling when visited by the police; Spiegel was not," *id.* at 211.)*; see also Wozniak*, 2016 WL 5373077, at *12 (plaintiffs were not seized as a matter of law when they were not currently residing at the apartment, but "simply returned to the Apartment on that date 'to try to get access to [their] stuff'" and were asked by police to leave). In this case, even though Mr.

4

Grafton has a 1/3 interest in the home and was threatened with arrest if he did not leave, he was not residing there, and therefore he likely was not seized when police asked him to leave.

Even if Mr. Grafton properly alleges that he was seized, however, his § 1983 claim fails because under the circumstances, the seizure was not unreasonable. As "part of their community caretaking function," police may "separate parties to a domestic disturbance by ordering one party to leave the premises regardless of whether that order amounts to a seizure." *Lunini v. Grayeb*, 184 F. App'x 559, 563 (7th Cir. 2006) (citing *White v. City of Markham*, 310 F.3d 989, 995-96 (7th Cir. 2002)). While the facts alleged do not indicate that Mr. Grafton and his brother were necessarily engaged in a domestic disturbance, Mr. Grafton had just broken a window, albeit with permission, and the police were within their rights to separate the two before the situation potentially escalated. In *White*, the Seventh Circuit held that "it could not have been unreasonable for Officer Muldrow to request White, the family member with the apparently inferior property interest in remaining on the premises, to vacate . . . Afterwards, when all of the facts were clear, it may have been that Officer Muldrow was incorrect in that conclusion, but a police officer cannot be expected to make that determination when lamps are flying and family members are shouting at each other." 310 F.3d at 996. Applying the same test here, Mr. Grafton appeared to have the inferior possessory interest in the home, regardless of the probate paperwork he provided, given that his brother had an equal ownership interest and was residing in the home. It was not unreasonable for the police officers to ask him to leave. Accordingly, even if Mr. Grafton could properly allege a seizure, his § 1983 claim fails because that seizure was not unreasonable.

Without an underlying § 1983 violation, Mr. Grafton's conspiracy claim also fails. A conspiracy is "an agreement between two or more persons to accomplish an unlawful purpose," *United States v. Stotts*, 323 F.3d 520, 522 n.1 (7th Cir. 2003). Here, as described above, the

defendant police officers did not have an unlawful purpose, and a "person may not be prosecuted for conspiring to commit an act that he may perform with impunity." *House v. Belford*, 956 F.2d 711, 720 (7th Cir. 1992). Mr. Grafton "cannot establish that defendants conspired to violate his Fourth Amendment right because, even if the officers 'seized' [him] when they ordered him to leave the . . . property, they did so lawfully." *Lunini*, 184 F. App'x at 563.

Finally, though Mr. Grafton alleges that he was wrongfully deprived of the police report describing that day, this allegation does not rise to the level of a claim upon which relief can be granted. As the plaintiff in a civil case, Mr. Grafton does not have a property interest in or constitutional right to a police report. If this case proceeded further, Mr. Grafton may be entitled to receive a copy as a matter of discovery, but as it stands he has not alleged a claim sufficient to prevent dismissal.

For the foregoing reasons, the defendants' motion to dismiss is granted. The dismissal is without prejudice; to the extent that Mr. Grafton can adduce additional facts or state a claim upon which relief can be granted, he may file an amended complaint by January 10, 2020.

Date: December 10, 2019

John J. Tharp, Jr.
United States District Judge