IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRAIG GRAFTON, | |
| Plaintiff, | |
| v. | No. 18-cv-6099 |
| FOBELK, et al. | Judge Franklin U. Valderrama |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Craig Grafton (Plaintiff) and his brother Raymond Grafton (Raymond) each own a 1/3 interest in the real property located at 7840 South May Street, Chicago, Illinois (the Property). Raymond resided at the Property, and in May of 2018, Plaintiff went to inspect the Property but was unable to access it. Plaintiff called the Chicago police seeking to gain entrance to the Property. The police arrived at the Property, and Raymond eventually came to the door and allowed them entry to the Property. Plaintiff followed the police into the Property. The police subsequently ordered Plaintiff to leave the Property, against his wishes.

Plaintiff filed suit against the police officers (collectively Defendants) alleging that Defendants violated his Fourth and Fifth Amendment rights under the United States Constitution. R. 39, Third Amended Complaint (TAC).[1] *See infra*, Section II. Plaintiff also asserts state common law claims of intentional infliction of emotional distress, respondeat superior, and indemnification. *Id.* Before the Court is

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 40, Mot. Dismiss. For the reasons that follow, Defendants' motion is denied in part and granted in part.

## Background[2]

On or around May 13, 2018, Plaintiff owned a 1/3 interest in the Property. TAC ¶ 1. Raymond and Erma Grafton (Erma), Plaintiff's sister, each also owned a 1/3 interest in the Property. *Id.* Plaintiff was the administrator of the estate of Mary Grafton, the mother of Plaintiff, Raymond, and Erma. *Id.* ¶ 4. On this date, after being told that gas fumes were coming from the Property, Plaintiff went to inspect the Property. *Id.* ¶¶ 5, 6. For over one hour, Plaintiff rang the door bells, knocked on the windows, and knocked on the doors, to no avail. *Id.* ¶ 6. Plaintiff became more concerned and called the police. *Id.* ¶ 7. Three police officers ultimately arrived, and two of them asked Plaintiff for proof that he owned an interest in the Property. In response, Plaintiff showed them documents revealing that he was the administrator of the estate and that he owned a 1/3 interest in the Property. *Id.* For approximately one hour, the police officers tried entering the Property by ringing the door bells and by knocking on the doors and windows, also to no avail. *Id.* ¶ 10. Finally, Plaintiff asked for permission to break a window, which he did. *Id.* Raymond came to the door and informed the police officers that he had been asleep. *Id.* ¶ 11.

---

[2] The Court accepts as true all of the well-pleaded facts in the Third Amended Complaint and draws all reasonable inferences in favor of Plaintiff. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

The police officers and Plaintiff then entered the Property. TAC ¶ 11. Unescorted, Plaintiff inspected the Property: he smelled no gas; he checked the faucets and restroom to ensure they were operating properly; and he went into the basement to ascertain whether the plumbing was functioning property. *Id.* A police officer went downstairs and ordered Plaintiff to leave the Property. *Id.* ¶ 12. Upon arriving on the first floor in the living room where Raymond and other police officers were standing, another police officer ordered Plaintiff to go stand on the porch. *Id.* ¶¶ 13, 15. Plaintiff complied but asked why he was being ordered out of the Property. *Id.* ¶ 16. One of the police officers told Plaintiff to leave the Property or he would be arrested. *Id.* After some more back and forth, one of the police officers again told Plaintiff he would be arrested. *Id.* ¶ 17. Plaintiff then left the Property. *Id.* ¶ 20.

On September 6, 2018, Plaintiff filed a multi-count complaint against Defendants. R. 1, Compl. The original complaint has since been amended. On February 4, 2020, Plaintiff filed his Third Amended Complaint against Defendants consisting of four counts. TAC. Count I alleges violations of his Fourth and Fifth Amendment rights pursuant to 42 U.S.C. § 1983 (*id.* ¶¶ 26–39), Count II alleges a claim of intentional infliction of emotional distress (*id.* ¶¶ 40–47), Count III asserts a claim for respondeat superior (*id.* ¶¶ 49–52), and Count IV seeks indemnification (*id.* ¶¶ 53–56). Defendants move to dismiss Plaintiff's Third Amended Complaint pursuant to Rule 12(b)(6).

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

**Analysis**

Defendants first argue that the Court should dismiss Count I, as Plaintiff failed to allege sufficient facts giving rise to a violation of his Fourth or Fifth Amendment rights and therefore fails to state a cause of action. Mot. Dismiss. They then assert that Plaintiff's state law claim for intentional inflict of emotional distress (Count II) is untimely and barred by the statute of limitations, and therefore his state

4

law claims for respondeat superior (Count III) and indemnification (Count IV) also must fail. *Id.*

## I. Section 1983 Fifth Amendment Claim

Defendants argue that although Plaintiff alleges that they deprived him of property, he does not properly plead a public taking or deprivation of property without due process. Mot. Dismiss at 4. Defendants contend that in order to sustain a Fifth Amendment claim, a party must plead a physical appropriation of property or, alternatively, a denial of an economically viable use of his land. *Id.* at 5 (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1014 (1992)). They assert that Plaintiff already has sought and received the remedy of eviction, and therefore, he used his due process rights to obtain possession of the Property from his brother. *Id.* at 5–6.

While Plaintiff maintains that the Defendants are wrong in stating that no property was seized, Plaintiff admits that there was no permanent taking or condemnation of his property. R. 51, Resp. at 6. Plaintiff seemingly concedes that he does not have a Fifth Amendment claim. The Fifth Amendment Takings Clause states that private property shall not be taken for public use without just compensation. *Knick v. Township of Scott, Pa.*, 139 S.Ct. 2162, 2167 (2019). Therefore, a property owner has a claim for violation of the Takings Clause as soon as the government takes his property for public use without paying for it. *Id.* at 2170. This applies to a local government as well. *Id.* To the extent Plaintiff has not abandoned his Fifth Amendment claim, the Court finds, in viewing the allegations of the complaint in the light most favorable to Plaintiff, that Plaintiff fails to allege a

5

Fifth Amendment violation, and grants Defendants' motion to dismiss as to any relief Plaintiff seeks under the Fifth Amendment under Count I.

## II. Section 1983 Fourth Amendment Claim

Nor does Plaintiff, according to Defendants, plead a Fourth Amendment violation because he was not seized. Mot. Dismiss at 6–7. Alternatively, argue Defendants, even if Plaintiff was seized, the seizure was reasonable. *Id.* at 7–8. Plaintiff asserts that his constitutional rights were violated by the police officers who ordered him to leave a property in which he owns a 1/3 interest. Resp. at 2–3. The wrinkle in this case is that Plaintiff does not allege that Defendants actually seized his property. Rather, his contention is that Defendants interfered with his property interest. *Id.* at 4. Further, he argues that, due to the police officers' show of authority, he had no choice but to submit. *Id.* at 6–7.

The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, provides in pertinent part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. AMEND. IV. "The Fourth Amendment protects two types of expectancies, one involving searches and the other seizures." *Soldal v. Cook Cnty.*, 506 U.S. 56, 63 (1992). The Fourth Amendment applies to civil cases. *Id.* at 61. Moreover, "when it comes to the Fourth Amendment, the home is first among equals." *Florida v. Jardines*, 569 U.S. 1, 6 (2013). The Supreme Court has found that a seizure of property occurs when there is "some meaningful interference with an individual's possessory interest in that property." *Soldal*, 506 U.S. at 61. In

*Soldal*, the Supreme Court clarified that a person may challenge a seizure of his property based on his property interest. *Id.* The Supreme Court has made clear that even temporary seizures are within the scope of the Fourth Amendment, "so long as there is some meaningful interference with an individual's possessory interest." *U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984).

But, as a legal matter, "the question of whether a seizure has occurred when police officers merely instruct an individual to leave their home remains unresolved." *Wozniak v. Zielinski*, 2016 WL 5373077, at *11 (N.D. Ill. Sept. 26, 2016) (internal quotation marks omitted). When a person has no desire to leave the scene of an encounter with police, "the appropriate inquiry is whether a reasonable person would feel free to decline the officer's request or otherwise terminate the encounter." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1177 (7th Cir. 1994) (quoting *Florida v. Bostick,* 501 U.S. 429, 435–36 (1991)).

Here, Plaintiff alleges that he owns a 1/3 interest in the Property. TAC ¶ 1. He further alleges that he called the police to the Property and that he showed police officers his paperwork that evidenced his interest in the Property. *Id.* ¶ 7. Plaintiff claims that notwithstanding this interest, the police officers ordered him to leave the Property or face arrest. *Id.* ¶¶ 12–17. Plaintiff insists that under *Soldal*, he has pled an unconstitutional seizure. Resp. at 5.

Defendants argue that Plaintiff himself was not seized (Mot. Dismiss at 6–7), but that argument ignores the nature of Plaintiff's Third Amended Complaint. Plaintiff does not allege that he was seized; rather, he alleges that the Defendants

7

temporarily deprived him of his freedom to visit and inspect the Property and of his possessory interest in and enjoyment of the Property. TAC ¶ 27. Again, the Supreme Court has made clear that the temporary deprivation of a property interest may constitute a seizure. *Jacobsen*, 466 U.S. at 113. Defendants contend that *Soldal* is distinguishable, as that case involved the actual taking and damaging of the plaintiffs' property. R. 53, Reply at 2–3. To the contrary, here it was Plaintiff who was told to leave the Property he had damaged. *Id.* Defendants, however, ignore the Supreme Court's pronouncement of the protection the Fourth Amendment provides regarding property interests. *Soldal*, 506 U.S. at 61. Therefore, the Court finds that this argument provides no basis for dismissing Plaintiff's Third Amended Complaint and indeed, is contrary to law. Moreover, for the purposes of a motion to dismiss, the Court finds that Plaintiff has sufficiently pled a seizure under the Fourth Amendment.

Next, Defendants assert that to the extent the Court finds that Plaintiff has adequately pled a seizure, the seizure was reasonable because Plaintiff had broken a window. Mot. Dismiss at 7–8. They also argue that any seizure was reasonable because Plaintiff had an inferior possessory interest. Reply at 2. Plaintiff counters that the police officers expressly permitted him to break a window because neither Plaintiff nor the police officers were able to get Raymond to come to the door. Resp. at 8. Plaintiff also claims that the police officers' seizure was unreasonable because, before they threatened him with arrest unless he left the Property, there were no

8

angry or hostile interactions between Plaintiff and Raymond, and there were no public or private safety or emergency concerns. *Id.*

So long as a seizure is reasonable, it will survive constitutional scrutiny. *Soldal*, 506 U.S. at 71. Reasonableness is determined by a "careful balancing of governmental and private interests." *Id.* (quotations omitted). Thus, a court must balance the "nature and quality of the intrusion" on the individual against the "importance of the governmental interests alleged to justify the intrusion." *Jacobsen*, 466 U.S. at 125 (quotations omitted). A determination as to whether a seizure is reasonable is a fact intensive argument, and therefore the Court finds that it is inappropriate on a motion to dismiss. *See Liqui-Box Corp. v. Scholle IPN Corp.*, 449 F. Supp. 3d 790, 800 (N.D. Ill. 2020) (the purpose of a motion to dismiss is to test the sufficiency of the complaint, accepting all well-pleaded allegations as true, not to decide the merits or resolve factual disputes) Accordingly, on this basis, the Court finds that Plaintiff has sufficiently plead a Fourth Amendment claim.

Finally, Defendants argue that Plaintiff cannot proceed on his claims against Defendants Bolin or Gilliland because Plaintiff fails to properly name them in violation of Federal Rule of Civil Procedure 10(a). Mot. Dismiss at 8. Defendants point out that Plaintiff has named, in addition to Defendant Fobelk, Chicago Police Officer Badge number either 1895 or 13406. Defendants maintain that Plaintiff has been provided information identifying police officers Bolin and Gilliland, but he continues to fail to properly name either one of them in his Third Amended Complaint. *Id.* For his part, Plaintiff responds that he will seek leave to more specifically identify the

9

two defendants after discovery, which courts have allowed. Resp. at 9–10 (citing *Donald v. Cook Cnty. Sheriff's Dep't,* 95 F.3d 548, 556 (7th Cir. 1996) and *Towns v. Dart*, 2015 WL 1542510, at *2 (N.D. Ill. Apr. 6, 2015)).[3]

Defendants rely primarily on *Myles v. U.S.*, 416 F.3d 551 (7th Cir. 2005). *Myles* involved a federal inmate filing suit and naming the title of a position instead of the names of individual prison guards as defendants. Moreover, the primary issue in that case was the confusion on behalf of the plaintiff as to the nature of his claim. *Id.* at 552–53. Here, Plaintiff has referenced the defendant police officers by their potential names and also a reference to the phrase "John Doe" on the basis that he does not know their true identity. The Court does not fault Plaintiff, who is a *pro se* litigant, for not identifying each of the police officers at this stage based on an assumption that Plaintiff may not know their true identity. *See Maclin v. Paulson*, 627 F.2d 83, 87–88 (7th Cir. 1980) (when "party is ignorant of defendants' true identity, it is unnecessary to name them until their identity can be learned through discovery or through the aid of the trial court") The Court denies Defendants' request to dismiss claims against Bolin and Gilliland at this time.

### III. Intentional Inflict of Emotional Distress

Next, Defendants argue that Plaintiff's state law claim of intentional infliction of emotional distress is untimely. Mot. Dismiss at 9. Defendants maintain that

---

[3]Defendants also argue in their Reply that the female officer at the scene provided Plaintiff the names and badges of the three police officers at the scene. Reply at 8 (citing Plaintiff's original response (R. 48)). Yet, Plaintiff responds that he did not know which two names belonged to the two police officers who acted wrongfully. R. 48 at 8. Moreover, such an argument derives from a brief that Plaintiff has replaced with his revised Response (R. 51). Accordingly, the Court cannot consider this argument.

10

Plaintiff's claims began to accrue on May 12, 2018, the date of his encounter with the police. Yet, Plaintiff's original complaint, filed September 6, 2018, makes no mention of any type of emotional distress. Defendants point out that, instead, Plaintiff waited until he filed a prior amended complaint on January 9, 2020 to allege any emotional distress. *Id.* They argue that the statute of limitations for state law claims against public employees is one year, and that Plaintiff was required to bring his emotional distress claim no later than May 12, 2019. *Id.*[4]

Plaintiff retorts that his emotional distress claim relates back to the original complaint and therefore is timely. Resp. at 11–12 (citing *Phillips v. Ford Motor Co.*, 435 F.3d 785 (7th Cir. 2006)). He also maintains that Defendants were on notice of the May 2018 occurrence based on his original complaint. *Id.*

Federal Rule of Civil Procedure 15(c)(1)(B) states that "[a]n amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(B). "[R]elation back is permitted … where an amended complaint asserts a new claim on the basis of the same core of facts, but involving a different substantive legal theory than that advanced in the original pleading." *Bularz v. Prudential Ins. Co. of Am.*, 93 F.3d 372, 379 (7th Cir. 1996); *see also Luckett v. Conlan*, 561 F. Supp. 2d 970, 975

---

[4] Defendants reference various state court cases discussing the relation back doctrine (Reply at 6–7), yet these state court cases do not apply Federal Rule of Civil Procedure 15. Nevertheless, in *Porter v. Decatur Mem'l Hosp.*, 882 N.E.2d 583, 592 (Ill. 2008), the Illinois supreme court confirmed that it would use federal law for guidance and adopted a similar test for analyzing relation back claims.

11

(N.D. Ill. 2008) ("Rule 15(c)(1)(B) allows an amendment to relate back to the original pleading when the amendment asserts a new claim based on the same core of facts alleged in the original pleading, but involves a new legal theory."). A party that adds a new substantive claim to his action need only ensure that "the new claim stems from the same 'conduct, transaction, or occurrence' as was alleged in the original complaint … [and] there is no additional requirement that the claim be based on an identical theory of recovery." *Bularz*, 93 F.3d at 379.

In Plaintiff's original complaint, he alleges that in May of 2018, police officers ordered him to leave the Property in which he is the 1/3 owner and administrator of the estate. Compl. at 2. He further alleges that he complied with the police officer's order to leave the Property after a police officer granted him permission to enter the Property. *Id.* at 3. Plaintiff's original complaint alleges facts relating to the same occurrence as that in his Third Amended Complaint. Accordingly, Plaintiff's emotional distress claim, while a new theory of recovery, relates back to the original complaint and is timely for the purposes of statute of limitations.

Defendants cite to three federal court cases for support, but each is distinguishable. In *Simpson v. Doody*, the court concluded that the plaintiff's federal claims were barred by the statute of limitations, and that the plaintiff conceded the relation back issue by failing to address the different limitations periods for her state and federal claims. 2019 WL 377705, at *4 (N.D. Ill. Aug. 12, 2019). Moreover, the court found that even if the plaintiff could rely on the relation back doctrine, her state law claims would remain time-barred because she filed her initial complaint after the

12

statute of limitations expired for these claims. *Id.* Here, Plaintiff has not confused the statute of limitations periods for his claims and his original complaint was filed before the expiration of the statute of limitations.

In *Alamo v. City of Chi.*, 2015 WL 4554759, at *6 (N.D. Ill. 2015), the court found that the plaintiff's claim under the American with Disabilities Act did not relate back to a timely-filed complaint. However, this finding was based on the fact that the prior complaint contained allegations related to harassment based on race or national origin but failed to mention anything regarding his request for reasonable accommodation. *Id.* Yet, in that case, the plaintiff's allegations concerned numerous events and acts of harassment that occurred over several months. *Id.* at *1. In *Mayle v. Felix*, 545 U.S. 644, 649 (2005), the petitioner's original *pro se* habeas petition was timely, but his amended petition, which added a new claim, was filed after the limitations period expired. The petitioner's original petition raised a Sixth Amendment Confrontation Clause claim based on the admission at trial of a witness's videotaped statements, while the amended petition added a Fifth Amendment challenge to statements the petitioner made before trial. *Id.* at 657. The Supreme Court determined that the petitioner's claims "targeted separate episodes" that occurred "at a different time and place," and therefore the newly added claim did not relate back to the original petition and was untimely. *Id.* at 660. Neither *Alamo* nor *Mayle* support Defendants' argument because in both cases, the disparate claims were based on more than one singular event that occurred on more than one day. Here, all of Plaintiff's claims derive from his interaction with police officers on one

13

day, and the occurrence Plaintiff references in his original complaint is the same as the one in his Third Amended Complaint.

The Court finds that Plaintiff's claim for intentional infliction of emotional distress relates back to the original complaint and therefore is not time-barred. As such, the Court denies Defendants' motion with respect to Count II.

### IV. Respondeat Superior and Indemnification

Lastly, Defendants argue that Plaintiff's respondeat superior count (Count III), as well as his indemnification count (Count IV), should be dismissed as there are no remaining underlying state law claims. Mot. Dismiss at 10. Plaintiff counters that the Court should deny the motion because his state law claim for intentional infliction of emotional distress is properly before the Court. Resp. at 13.

Plaintiff has directed his respondeat superior and indemnification counts against the City of Chicago only, not Defendants. Yet, the motion to dismiss at issue was brought on behalf of Defendants only, not the City of Chicago.[5] To the extent Defendants are seeking dismissal of Counts III and IV, their singular argument fails because it hinges on the viability of their motion to dismiss Count II. Since the Court has denied Defendants' motion to dismiss with respect to Count II, Defendants' motion to dismiss Counts III and IV must also fail.

### Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint [40] is granted with respect to Plaintiff's Fifth Amendment

---

[5] In fact, Defendants' attorneys, Mr. Cohen and Mr. Boose, have filed appearances only on behalf of Defendants, not the City of Chicago. R. 12 and R. 13.

claim under Count I, and Plaintiff's Fifth Amendment claim is dismissed with prejudice. Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint [40] is denied in all other respects. Defendants are directed to file their answer to Plaintiff's Third Amended Complaint by January 19, 2021. The parties are directed to file a joint status report by February 2, 2021. If Plaintiff wishes to file another motion for attorney representation, he must file such a motion by January 19, 2021. To the extent Plaintiff does, the Court directs Plaintiff to the standard pronounced by the Court in its earlier ruling. R. 9.

DATED: December 17, 2020

_____
United States District Judge
Franklin U. Valderrama

15